# 2008 DTA 94

**TRIBUNAL DE APELACIONES**
**REGIÓN·JUDICIAL DE SAN JUAN**
**PANEL IV**

TRAFFIC LOGOS, INC.
Recurrente

v.

AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN
Recurridas

Núm. KLRA-08-00756

San Juan, Puerto Rico, a 16 de julio de 2008

Panel integrado por su Presidente, el Juez López Feliciano,
la Juez Pabón Charneco y el Juez Hernández Serrano

Pabón Charneco, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos, Traffic Logos, Inc., en adelante, Traffic, y nos solicita que revoquemos la determinación emitida por Junta de Subastas de la Autoridad de Carreteras y Transportación, en adelante, Junta de Subastas. Mediante la misma, se notificó que la Junta de Subastas había adjudicado la Subasta Formal S-08-13, Instalación de Rótulos de Servicios en Expresos y Autopistas.

Por las razones que se esbozan a continuación, se confirma el dictamen recurrido.

### I

Conforme surge del recurso ante nuestra consideración, el 14 de diciembre de 2007, la Junta de Subastas celebró la Subasta Formal S-08-13 para la instalación de rótulos de servicios en expresos y autopistas. A dicha Subasta comparecieron como licitadores DMG Media Group, Inc., en adelante, DMG, y Traffic.

El 14 de diciembre de 2007 se celebró el Acto de Apertura y Lectura de las Proposiciones. Surge del documento que la propuesta de DMG en términos del por ciento de comisión para la Autoridad de Carreteras y Transportación sería de un treinta por ciento (30%). Por su parte, el por ciento de comisión propuesto para la Autoridad de Carreteras y Transportación por Traffic fue de setenta y cuatro por ciento (74%) para el primer año; treinta y nueve por ciento (39%) para el segundo año; y cuarenta y cuatro por ciento (44%) para el tercer año.

En cuanto a errores y formalidades, se acotó que DMG había dejado en blanco el espacio provisto para el nombre de la compañía aseguradora en el *Bid Bond*. Por su parte, Traffic no presentó su propuesta en la Hoja de Licitación AC-71; su *Bid Bond* estaba a nombre de otra compañía, a saber, Trans Ad, y presentó una licitación por diez (10) años. No obstante, sobre este último extremo, la Junta de Subastas sólo evaluó tres (3) años, que fue lo solicitado en las especificaciones e instrucciones de la Subasta.

Ante lo anterior, se le informó a los presentes que la Subasta sería evaluada por un Comité Evaluador. Dicho Comité, conforme se colige de autos, solicitó una opinión legal sobre los defectos de la propuesta de Traffic. Se desprende de dicha opinión legal lo siguiente:

"...

*El documento intitulado "Términos, Condiciones e Instrucciones Aplicables a las Compras que Efectúe la Autoridad de Carreteras y Transportación", en adelante, "Términos y Condiciones", establece en su inciso 30 (a) que "[l]os licitadores deberán de suplir toda la información requerida en la invitación a subasta y sus anexos"...".*

En cuanto a los precios, la Hoja de Licitación provee un espacio para indicar el porciento de comisión a ser recibido por la ACT por los rótulos a ser instalados. El licitador, en lugar de añadir el porciento de comisión en el espacio provisto, hace referencia en el mismo a una gráfica en la propuesta. La grafica (sic) en la propuesta es una tabla en la cual de manera confusa se proveen los porcientos de comisión de la ACT que varían de año en año, son un estimado y no están garantizados, conforme surge de la misma propuesta. Además, en la propuesta. ,el licitador condiciona su oferta a ingresos de otros anuncios de la Compañía Trans Ad que no son parte de los requisitos establecidos en la subasta. La propuesta indica que los espacios de la publicidad consistirán de letreros digitales, localizaciones en el aeropuerto, muelles turísticos y paradas de autobuses. La

subasta es para la instalación de rótulos de servicios en expresos y autopistas, no en ninguno de los lugares propuestos por Trans Ad. En la parte C de las Especificaciones para esta subasta, la cual describe el servicio a ser provisto, indica que la instalación de rótulos de servicios específicos en autopistas y expresos de la ACT. Esto no incluye aeropuertos, muelles ni paradas de autobuses. Por estar condicionada la oferta de ingresos del licitador a otros anuncios no provistos por lo que requiere la subasta esto constituye una oferta alterna. La cual conforme al inciso 29(c) de los términos y condiciones de ACT no puede ser considerada. También constituye una oferta múltiple, donde el licitador ofrece más de un precio por el artículo cotizado. Por tanto, bajo el inciso 29(d) tampoco puede ser considerada la oferta del licitador.

En los Términos, Condiciones e Instrucciones Aplicables a las Compras que Efectúe la ACT, en adelante, términos y condiciones, en el inciso 8, en cuanto a los Precios Cotizados, se provee que los precios …*"estarán sujetos a cambios por aumento en los precios del mercado o cualquier otra índole…"*, al licitador no garantizar los precios, éstos podrán estar sujetos a cambios contrario a lo provisto por los términos y condiciones de la ACT.

Debido a que el licitador no cumplió con las especificaciones, términos, condiciones e instrucciones indicados en los documentos contractuales de compra, conforme dispone el inciso 16 de los términos y condiciones de ACT, procede el rechazo de la oferta presentada por el licitador.

Además, el licitador presentó una fianza con Trans Ad Puerto Rico, Inc. como el Principal de dicha fianza. Aun cuando el licitador indica que se encuentra en un Joint Venture con dicha entidad, el licitador de esta subasta es Traffic Logos, Inc., y como tal es dicha entidad quien debe presentar garantía de licitación *"Bid Bond"*, conforme dispone el inciso 30(g) de los términos y condiciones de la ACT. Por lo tanto, el licitador tampoco cumplió con dicho término.

Véanse, págs. 71-72 del Apéndice.

A su vez, se desprende de autos que ciertas opiniones de la Oficina de Servicios Generales de la agencia fueron evaluadas por sus ingenieros.

Completados los trámites, se emitió el aviso de adjudicación. Surge del escrito:

"…

*La propuesta de Traffic Logos, Inc. fue referida para opinión legal debido a varias irregularidades que debían ser analizadas. La Junta de Subastas recibió y acogió la opinión legal emitida y determinó rechazar la propuesta de la compañía Traffic Logos, Inc. debido a que la Fianza de Licitación (Bid Bond) no está a nombre del licitador principal, a que su propuesta no fue entregada en la Hoja de Licitación (AC-71) y por condicionar su oferta a ingresos de otros anuncios no requeridos en la subasta, lo cual constituye una propuesta alterna. Estos errores fueron considerados no subsanables.*

*La compañía, DMG Media Group, Inc. dejó en blanco el espacio provisto para el nombre de la compañía aseguradora en la Fianza de Licitación (Bid Bond). La Junta de Subastas evaluó dicho documento y determinó que es un error subsanable, ya que dicha fianza incluye el sello corporativo y firma en original de la compañía fiadora, Mapfre-Praico Insurance, Company.*

…".

Véase, pág. 1 del Apéndice.

En consecuencia, la Junta de Subastas le adjudicó la Subasta en controversia al único postor responsivo que cumplía con las especificaciones de la misma, a saber, DMG.

Insatisfecho con la determinación tomada, Traffic instó reconsideración ante la Junta de Subastas. Arguyó, *inter alia*, que el expediente "*estaba huérfano de prueba a base de la cual la Junta de Subastas puede concluir con un grado mínimamente aceptable de certeza que DMG· media (sic) puede cumplir con los objetivos y expectativas de este proyecto*". Acotó que no existía evidencia en el expediente administrativo de que DGM pudiera realizar el proyecto exitosamente ni que su propuesta fuera más beneficiosa que la de Traffic. Señaló que la propuesta de DMG no contenía estudios, ni incluía planos o diagramas ni proyecciones económicas o de mercadeo. A su vez, argumentó que la oferta no incluyó un plan de ventas ni identificaba los oficiales o el personal que realizará las funciones. Sobre las omisiones de su propuesta, apuntó que las mismas eran subsanables, toda vez que expresar el precio en un lugar porque no hay espacio en el formulario provisto no priva al Gobierno de su garantía de que el contrato se llevará a cabo conforme a lo estipulado. Alegó que dicho error no le confirió ventaja a Traffic sobre DGM ni afectó la competitividad del proyecto.

En relación al error de la Fianza, señaló que presentó la misma a nombre de su socia de negocios, Trans Ad.

La Junta de Subastas acogió la reconsideración. Transcurrido el término reglamentario para considerar la misma, y no habiendo actuado, Traffic acude ante nos. [1] Procedemos a resolver.

## II

En su escrito, Traffic plantea que incidió la Junta de Subastas al otorgar la Subasta de autos a un licitador que no cumplió con los requisitos establecidos en el pliego de especificaciones, cometiendo errores que no eran subsanables; y al descalificar a Traffic por cometer unos errores que son subsanables.

## III

El procedimiento de pública subasta es de suma importancia y está revestido del más alto interés público. *Marina v. Comisión*, res. en 27 de abril de 2007, 170 D.P.R. ___ (2007), **2007 J.T.S. 83**; *R&B Power v. E.L.A.*, res. en 20 de marzo de 2007, 170 D.P.R. ___ (2007), **2007 J.T.S. 56**; *Empresas Toledo v. Junta*, res. en 31 de agosto de 2006, 168 D.P.R. (2006), **2006 J.T.S. 147**; *A.E.E. v. Maxon*, res. 9 de diciembre de 2004, 163 D.P.R. ___ (2004), **2004 J.T.S. 199**.

A los fines de proteger el erario, el Gobierno realiza la adquisición de los materiales y servicios que necesita, al igual que la construcción de obras públicas, mediante la celebración de subastas. *Cordero Vélez v. Municipio de Guánica*, res. en 12 de febrero de 2007, 170 D.P.R. ___ (2007), **2007 J.T.S. 29**.

El propósito de requerir subastas para la realización de obras y la contratación por el Gobierno, es proteger los intereses y dineros del pueblo al promover la competencia para lograr los precios más bajos posibles; evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos y minimizar los riesgos de incumplimiento. *Perfect Cleaning v. Cardiovascular*, res. en 18 de septiembre de 2007, 172 D.P.R. ___ (2007), **2007 J.T.S. 172**; *Accumail de Puerto Rico v. Junta de Subastas*, res. el 12 de abril de 2007, 170 D.P.R. ___ (2007), **2007 J.T.S. 75**; *Marina Costa Azul v. Comisión de Seguridad y Protección Pública, supra; Torres v. Junta*, res. en 17 de enero de 2007, 169 D.P.R. ___ (2007), **2007 J.T.S. 13**; *Mar-Mol Co., Inc. v. Adm. Servicios Gens.*, 126 D.P.R. 864, 871 (1990); *Cancel v. Municipio de San Juan*, 101 D.P.R. 296, 300 (1973); *Justiniano v. E.L.A.*, 100 D.P.R. 334, 338 (1971).

"*La buena administración de un gobierno implica llevar a cabo sus funciones como comprador con eficiencia, honestidad y corrección para proteger los intereses y dineros del pueblo al cual dicho gobierno representa.*" *Mar-Mol Co., Inc. v. Adm. Servicios Gens., supra*, a la pág. 871. Véase, *R&B Power, Inc. v. Estado Libre Asociado*, res. en 20 de marzo de 2007, 170 D.P.R. ___ (2007), **2007 J.T.S. 56**; *Empresas Toledo*

*v. Junta, supra*; *A.E.E. v. Maxon*, res. 9 de diciembre de 2004, 163 D.P.R. ___ (2004), **2004 J.T.S. 199**; *RBR Const., S.E. v. AC*, 149 D.P.R. 836 (1999).

Fundamentalmente, la consideración primordial al momento de determinar quién debe resultar favorecido en el proceso de adjudicación de subastas debe ser el interés público en proteger los fondos del pueblo de Puerto Rico. *Cordero Vélez v. Municipio de Guánica, supra.*

No obstante, dichos postores **no tienen un derecho adquirido** meramente por su participación en la subasta. *Perfect Cleaning v. Cardiovascular, supra*; *Torres v. Junta, supra*; *Empresas Toledo v. Junta, supra.* Ello responde, entre otras cosas, al hecho de que generalmente el momento en que una agencia gubernamental queda obligada en un proceso de subasta es cuando se otorga el contrato y no cuando se adjudica la buena pro. *Perfect Cleaning v. Cardiovascular, supra*; *Justiniano v. E.L.A., supra.* De conformidad con ese principio, las agencias poseen discreción para seleccionar el postor que más convenga al interés público y pueden, incluso, revocar la adjudicación de una subasta antes de que se formalice el contrato correspondiente. *Cordero Vélez v. Municipio de Guánica, supra*; *A.E.E. v. Maxon, supra.*

La discreción que se le reconoce a las agencias para rechazar las licitaciones o anular una subasta está sujeta tanto a los objetivos del estatuto que las regula como al interés público. *Perfect Cleaning v. Cardiovascular, supra.* Dicho Foro resolvió que: *"(s)ólo en relación a estos fines [...] puede ejercerse la discreción administrativa delegada para anular una subasta válidamente adjudicada"*, y se expresó que lo contrario, sería permitir el abuso y la arbitrariedad. *Perfect Cleaning v. Cardiovascular, supra*; *RBR Const., S.E. v. AC, supra,* a la pág. 852.

Es necesario, de este modo, evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia, el descuido y los riesgos de incumplimiento. De ahí que las normas que rigen las compras de municipios no pueden descartarse, aun en situaciones meritorias que exigen de cierta flexibilidad, tales como la adquisición de bienes y servicios en casos de emergencia o situaciones excepcionales. *Hatton v. Mun. de Ponce*, 134 D.P.R. 1001, 1005 (1994).

Cuando está envuelto el uso de bienes o fondos públicos, es esencial la aplicación rigurosa de todas las normas pertinentes a la contratación y desembolso de dichos fondos, a fines de proteger los intereses y el dinero del Pueblo. *De Jesús González v. A.C.*, 148 D.P.R. 255 (1999).

Así pues, la revisión judicial de subastas se rige por principios similares a los que gobiernan la revisión de procedimientos análogos celebrados ante las agencias. En estos últimos casos, según es sabido, la facultad de revisión de los tribunales es limitada. En tal sentido, el Tribunal Supremo de Puerto Rico ha establecido que las decisiones de los organismos administrativos se presumen correctas; mereciendo así la deferencia de los tribunales. De tal suerte, que la revisión judicial de las mismas se circunscribe a determinar si la agencia —en cada caso particular—, actúo de manera arbitraria o ilegal; o de forma tan irrazonable, que su actuación constituyó un abuso de discreción. *Mun. de San Juan v. J.C.A.*, 149 D.P.R. 263 (1999); *Franco v. Dpto. de Educación*, 148 D.P.R. 703 (1999).

**IV**

Dentro del marco jurídico antes enunciado, procedamos a resolver la controversia de autos.

En su escrito, Traffic nos plantea, en su primer error, que incidió la Junta de Subastas al otorgarle la buena pro de la Subasta en controversia a DMG, toda vez que ésta no cumplió con los requisitos establecidos en el Pliego de Especificaciones cometiendo errores que no eran subsanables. Es su contención que la Junta de Subastas debía evaluar si el licitador agraciado tenía capacidad para financiar el proyecto, mercadearlo y venderlo. Plantea que la compañía agraciada, a saber, DMG, era la primera vez que sometía una propuesta de la

naturaleza de la Subasta en controversia y que la misma fue escrita a mano, previo a cerrarse el proceso de presentación de propuestas. Arguye que la propuesta de DMG no incluyó estudios ni planos ni diagramas ni proyecciones económicas o de mercadeo.

La adjudicación de subastas se encuentra regulada por la Sección 3.9 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como *"Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico"*, 3 L.P.R.A. sec. 2169. Dicha sección dispone que las subastas se regirán por procedimientos informales y que su reglamentación y términos serán establecidos por cada una de las agencias, las cuales tendrán discreción para adoptar las normas procesales necesarias aplicables al procedimiento. *Empresas Toledo v. Junta, supra; Perfect Cleaning v. Cardiovascular, supra; RBR Const., S.E. v. AC, supra.* Las agencias deben adoptar un reglamento con fuerza de ley. *Constructora Celta Inc. v. A.P.*, 155 D.P.R. 820, 824 (2002).

A tenor con dicho principio, la Ley Núm. 74 de 23 de Junio de 1965, según enmendada, conocida como *"Ley de la Autoridad de Carreteras y Transportación"*, 9 L.P.R.A. 2001, *et seq.*, delegó en la Autoridad de Carreteras y Transportación la facultad de establecer los parámetros por los que deberán regirse las subastas que celebre dicha agencia. En lo pertinente, el Artículo 11 de la Ley Núm. 74, *supra*, 9 L.P.R.A. sec. 2011, dispone que: *"[a]l considerar proposiciones y hacer adjudicaciones, la Autoridad dará debida consideración a aquellos factores, además del precio, que a su juicio permitan la selección más beneficiosa para la Autoridad..."*.

De acuerdo con la facultad delegada, la agencia aprobó el Reglamento de Subastas, Reglamento Núm. 02-001, de 30 de junio de 1995, el cual establece todas las normas para el trámite, celebración y adjudicación de subastas que celebre dicha agencia.

Expuesto lo anterior, comencemos apuntando que nada se desprende del Reglamento ni del Pliego de Especificaciones de la Subasta, que las propuestas no podían ser hechas a manuscrito. De hecho, lo que exige el Reglamento es que las ofertas se reciban en sobres cerrados y que los documentos de proposiciones que así lo requieran deberán firmarse en tinta o bolígrafo por el licitador y éste deberá salvar con sus iniciales cualquier tachadura o corrección. A su vez, surge de las Especificaciones de la Subasta en controversia que *"las palabras o cifras deberán estar escritas en tinta o mecanografiadas"*. [2]

Por otro lado, no surge del Pliego de Especificaciones de la Subasta en controversia que las propuestas debían incluir estudios, planos, diagramas o proyecciones económicas y/o de mercadeo. A su vez, se desprende que en cuanto a que DMG no incluyó en su propuesta un diseño, dibujo o foto del rótulo a instalar, la compañía anejó un Exhibit A donde apuntaba que los rótulos serían confeccionados e instalados conforme a las especificaciones de la Autoridad de Carreteras y Transportación y los *standard drawings*. No detectamos abuso de discreción por parte de la Junta de Subastas en esta determinación. A su vez, le corresponde a la Junta de Subastas determinar qué información es relevante para llegar a una determinación. Lo anterior, toda vez que Traffic se queja de que DMG no incluyó el plan de mercadeo ni identificó los ejecutivos de la compañía.

No podemos aceptar el argumento de que la oferta de DMG fue modificada después de abrirse su propuesta. Observamos que, conforme la reglamentación, las propuestas fueron remitidas a un Comité quien evaluó las mismas. En este proceso se clarificaron ciertos puntos por los ingenieros de la agencia al evaluarse los comentarios realizados por la Oficina de Servicios Generales de la agencia. Nada hallamos que denote arbitrariedad o irrazonabilidad sobre este proceder. El Reglamento dispone, *inter alia*, que se podrá aconsejar a un licitador sobre deficiencias en su propuesta para que tenga oportunidad de satisfacer los requisitos, así como intentar resolver cualquier incertidumbre relacionada con la propuesta y clarificar sus términos y condiciones. Asimismo, se podría proveerle a un licitador una oportunidad razonable para que someta cualquier modificación sobre precio o costo, técnica o de cualquier otra índole a su propuesta.

Es contención de Traffic que las omisiones presentadas tendrán *"consecuencias nefastas"* para la agencia. Observamos que éste, al igual que varios de los argumentos de Traffic, descansan en meras conjeturas. Sabido es que los señalamientos ante los tribunales apelativos hay que sustentarlos con prueba adecuada. Meras alegaciones no son suficientes así como tampoco las conjeturas. *Com. Vec. Pro-Mej., Inc. v. J.P.*, 147 D.P.R. 750 (1999); *Pueblo v. López Guzmán*, 131 D.P.R. 867 (1992); *Henríquez v. Consejo Educación Superior*, 120 D.P.R. 194, 210 (1987).

Por su parte, el Artículo VII, Sección F, inciso 6, del Reglamento dispone que *"[l]a Junta podrá, en el uso de su sana discreción, obviar cualquier informalidad o tecnicismo en los documentos de cualquier proposición, siempre que fueren errores subsanables"*.

Por su parte, el Artículo IX, Sección A, inciso 2, establece que *"[l]a Junta recomendará que no se adjudique una subasta al licitador más bajo o más alto, según propósito de la subasta, ... cuando dicho licitador haya dejado de cumplir con los términos estipulados en las condiciones de la subasta"*.

La determinación en torno a las omisiones estuvo basada en la discreción que cobija a la Autoridad bajo el Artículo VII del Reglamento 02-001 que dispone de forma específica que la Junta podrá, en el uso de su **sana discreción**, obviar cualquier informalidad o tecnicismo en los documentos de cualquier proposición, siempre que fueren errores subsanables.

Este artículo recoge la conocida norma federal relativa a que no toda desviación de los requisitos de una subasta provoca que la propuesta deba ser rechazada. Para que ello ocurra, ésta debe ser catalogada como una material o sustancial. **[3]** La caracterización de errores en las subastas como subsanables y no subsanables está latente en las siguientes expresiones del Tribunal Supremo en *RBR Const., S.E. v. A.C.*, *supra*:

*"La omisión de la fecha de subasta en el documento de fianza en este caso particular, a nuestro juicio, constituye una deficiencia totalmente inocua e insustancial que difícilmente podría justificar el rechazo de una licitación que cumpla con el resto de los requisitos.*

*....*

*Cabe enfatizar que la propia Junta [de Subastas de la Autoridad de Carreteras y Transportación] admitió en su carta a FHA que dicha omisión fue una mínima y de carácter subsanable."*

A las páginas 855-856.

No obstante lo anterior, en Puerto Rico no se ha establecido con precisión qué constituye un error subsanable o no subsanable. Aunque en otras jurisdicciones se ha intentado describir en qué estriba la diferencia entre los aludidos conceptos, ello no ha producido una norma consistente.

Empero, por su tangencia con la controversia de autos, entendemos de valor persuasivo las siguientes descripciones de lo que puede ser considerado como un defecto subsanable o insubsanable. Por ejemplo, el *Federal Acquisition Regulations System* establece que:

*"A minor informality or irregularity is one that is merely a matter of form and not of substance. It also pertains to some immaterial defect in a bid or variation of a bid from the exact requirements of the invitation that can be corrected or waived without being prejudicial to other bidders. The defect or variation is immaterial when the effect on price, quantity, quality, or delivery is negligible when contrasted with the total cost or scope of the supplies or services being acquired. The contracting officer either shall give the bidder an opportunity to cure any deficiency resulting from a minor informality or irregularity in a bid or waive the*

*deficiency, whichever is to the advantage of the Government.*"

48 C.F.R. 14.405.

A modo de ejemplo, en *Weidner v. Tully Envtl.*, 858 A2d 560, 566 (2004), el Tribunal Supremo de New Jersey citando el caso *Meadowbrook Carting Company, Inc. v. Borough of Island Heights*, 650 A2d 748, 752 (1994), expone el siguiente análisis de dos partes para determinar si una desviación de los requisitos establecidos para una subasta constituye un defecto subsanable o no:

"*First, whether the effect of a waiver would be to deprive the municipality of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements, and second, whether it is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition.*"

Al tenor de lo anterior, un error es considerado subsanable cuando su corrección: 1) no priva al Gobierno de su garantía de que el contrato se llevará a cabo conforme a lo estipulado; y 2) no le concede ventaja a un licitador sobre otro, ni afecta la competitividad del proceso de subasta.

Somos de opinión que Traffic simplifica las deficiencias de su propuesta, y que éstas no cumplen con los parámetros a ser seguidos para determinar si un error es subsanable o no. En el caso de autos, las omisiones de Traffic conforme surge del expediente son variadas, a saber:

"*En cuanto a los precios, la Hoja de Licitación provee un espacio para indicar el porciento de comisión a ser recibido por la ACT por los rótulos a ser instalados. El licitador en lugar de añadir el porciento de comisión en el espacio provisto hace referencia en el mismo a una gráfica en la propuesta. La grafica (sic) en la propuesta es una tabla en la cual de manera confusa se proveen los porcientos de comisión de la ACT que varían de año en año son un estimado y no están garantizados, conforme surge de la misma propuesta. Además, en la propuesta, el licitador condiciona su oferta a ingresos de otros anuncios de la Compañía Trans Ad que no son parte de los requisitos establecidos en la subasta. La propuesta indica que los espacios de la publicidad consistirán de letreros digitales, localizaciones en el aeropuerto, muelles turísticos y paradas de autobuses. La subasta es para la instalación de rótulos de servicios en expresos y autopistas, no en ninguno de los lugares propuestos por Trans Ad. En la parte C de las Especificaciones para esta subasta la cual describe el servicio a ser provisto indica que la instalación de rótulos de servicios específicos en autopistas y expresos de la ACT. Esto no incluye aeropuertos, muelles ni paradas de autobuses. Por estar condicionada la oferta de ingresos del licitador a otros anuncios no provistos por lo que requiere la subasta esto constituye una oferta alterna. La cual conforme al inciso 29(c) de los términos y condiciones de ACT no puede ser considerada. También constituye una oferta múltiple, donde el licitador ofrece más de un precio por el artículo cotizado. Por tanto, bajo el inciso 29(d) tampoco puede ser considerada la oferta del licitador.*

*En los Términos, Condiciones e Instrucciones Aplicables a las Compras que Efectúe la ACT, en adelante, términos y condiciones, en el inciso 8, en cuanto a los Precios Cotizados, se provee que los precios ...*"*estarán sujetos a cambios por aumento en los precios del mercado o cualquier otra índole...*", *al licitador no garantizar los precios, éstos podrán estar sujetos a cambios contrario a lo provisto por los términos y condiciones de la ACT.*

*Debido a que el licitador no cumplió con las especificaciones, términos, condiciones e instrucciones indicados en los documentos contractuales de compra, conforme dispone el inciso 16 de los términos y condiciones de ACT, procede el rechazo de la oferta presentada por el licitador.*

*Además, el licitador presentó una fianza con Trans Ad Puerto Rico, Inc. como el Principal de dicha fianza.*

*Aún cuando el licitador indica que se encuentra en un Joint Venture con dicha entidad, el licitador de esta subasta es Traffic Logos, Inc., y como tal, es dicha entidad quien debe presentar garantía de licitación "Bid Bond", conforme dispone el inciso 30(g) de los términos y condiciones de la ACT. Por lo tanto, el licitador tampoco cumplió con dicho término."*

Una lectura de la propuesta de Traffic revela de manera clara las deficiencias reseñadas en el párrafo que antecede. No tenemos que ser expertos para llegar a esta conclusión.

No nos queda duda que Traffic incumplió con las Especificaciones de la Subasta en controversia. No podemos aceptar la contención de Traffic de que sus errores son de naturaleza subsanables. Nada más lejos de la realidad. De hecho, uno de ellos incide en el precio, su oferta constituye una alterna lo que está expresamente prohibido en el Pliego de Especificaciones.

A su vez, Traffic, al no proveer el *Bid Bond* a su nombre, incumplió con los términos y condiciones de la Junta de Subastas.

En conclusión, declinamos intervenir con la determinación de la Junta de Subastas por no hallar vicios de arbitrariedad en el dictamen. Traffic pretende que concurramos con su percepción de lo que constituyen errores subsanables o insubsanables. Denegamos dicho petitorio.

Es norma reiterada que en materia de revisión judicial se presume la corrección de los dictámenes de las agencias administrativas que merecen el mayor respeto y deferencia, salvo que sean irrazonables y arbitrarias. La parte que impugne la decisión administrativa, tiene que demostrar que la misma es contraria a derecho y producir suficiente evidencia para derrotarlas. En el presente caso, Traffic no cumplió con lo antes indicado, por lo que la decisión administrativa debe prevalecer. Véase, *Castillo v. Departamento del Trabajo*, 152 D.P.R. 91 (20000); *Rivera Concepción v. A.R.P.E.*, 152 D.P.R. 116 (2000).

Luego de un cuidadoso examen del expediente, consideramos que la adjudicación de la subasta fue llevada a cabo dentro de un marco de razonabilidad. Este Tribunal viene llamado a respetar dicha actuación, toda vez que el derecho nos impone prestar gran deferencia a procesos que, como éste, requieren conocimiento especializado. Al examinar el caso de autos, encontramos que se trata del caso típico en el que debe prevalecer la norma de abstención judicial en deferencia a las determinaciones de hechos efectuadas por una agencia como resultado de su conocimiento. La Autoridad de Carreteras y Transportación es la que conoce cuáles serán los rótulos que pueden satisfacer sus necesidades y cuáles son las especificaciones técnicas que éstos requieren para así hacerlo.

Nada hay en el expediente que demuestre que la actuación de la agencia constituye un abuso de discreción o que no esté justificada o constituya una actuación irrazonable, ilegal o arbitraria. Por lo tanto, reafirmamos la presunción de legalidad y corrección que cobija a toda determinación administrativa y le conferimos la debida deferencia a la Junta de Subastas, quien posee la experiencia y el conocimiento especializado sobre los asuntos que están dentro del ámbito de sus facultades y responsabilidades.

## V

Por los fundamentos antes expuestos, se confirma la Resolución recurrida.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones

## ESCOLIOS 2008 DTA 94

**1.** En su escrito solicitó que, en auxilio de nuestra jurisdicción, paralizáramos los trámites ante la agencia. Dicho petitorio fue denegado por no cumplir con el Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B, R. 79.

**2.** Véase, pág. 86 del Apéndice.

**3.** Véase el *Federal Acquisition Regulations System*, 408 CFR 14.301, en su inciso (a) que dispone:

"*To be considered for award, a bid must comply* **in all material** *respects with the invitation for bids. Such compliance enables bidders to stand on an equal footing and maintain the integrity of the sealed bidding system.*" (Subrayado nuestro.)